Good morning. May it please the court. My name is Ryan Norwood. I'm an attorney with the Federal Public Defender, and I represent the petitioner Artis Moore. At the time of his offense, Artis Moore was a teenager who functioned at the level of an 11-year-old. He nevertheless received a sentence of life in prison with no hope of parole because his appointed lawyer failed to perform even the most basic duties that are expected of counsel at his trial and especially at his sentencing phase. This was a noncapital case, but under Nevada law it was still a bifurcated proceeding with the jury deciding punishment after finding guilt. This is a formal proceeding with a set of jury instructions with sworn witnesses from both sides, with the opportunity to cross-examine witnesses, and with the opportunity to present full closing arguments to the jury. The totality of what Mr. Moore's lawyer did during this proceeding was that he called one witness who later averred that the lawyer had never even interviewed him before he put him on the stand. And he presented a closing argument, which is presented in full on page 21 of my opening brief, which consisted of nothing other than a naked plea for mercy. The lawyer didn't bring up a single mitigating fact in his client's defense at this hearing. What the lawyer could have done at this hearing, if he had conducted any sort of reasonable investigation that was extensive, he could have brought up. Let me ask you a question, Counselor. The biggest problem that I have in this particular case is answering this question, really. Given that the Nevada Supreme Court has already determined that counsel was not ineffective, isn't my question that I must ask myself doubly deferential? I mean, it seems to me that now the question I would have is, is there any reasonable argument that counsel satisfied Strickland? That that is a totally different argument than maybe it would make if we were coming up from the district court in the Federal bench. Because now I have to give double deference to Nevada Supreme Court, right? I agree that we have to give double deference to the finding of deficient performance, which was the only issue that the Nevada Supreme Court reached. Even under that double deference, there isn't any reasonable argument here based just on what was in the state court record. Is there any clearly established Federal law that applies to ineffective assistance of counsel claims in this context? It is at least clear that there is clearly established law that Strickland applies in this sort of sentencing proceeding, a bifurcated jury trial. Strickland itself was a concern to lawyers' performance at sentencing. Well, the only reason I ask you that question, it seemed to me there was some argument about PRIMO, I call it PRIMO, and it seemed to me that PRIMO was decided after the state court decision. So, therefore, what I've really got to concentrate on is, is there any reasonable argument counsel satisfied Strickland? Well, if I could address first the issue of the clearly established law. Even if we go by the way the State presents the argument in their brief, which is that Strickland is the last word on this, it's at least clear that the Strickland right to effective assistance of counsel applies at a sentencing proceeding that has at least, you know, based on the level of formality and the standards of discretion. This is exactly the same type of hearing that both this Court and the United States Supreme Court has applied Strickland to in many different circumstances in the capital context. I agree that, you know, when you're representing a client at his sentencing,  I mean, one lawyer might have focused in this case, for example, on Mr. Moore's age and mental limitations. Perhaps another lawyer would have focused on the fact that he was the least culpable defendant here, the person who was sitting in a car outside the bar where all these events were happening. Perhaps another lawyer would have focused on his family history of horrific abuse that he has. Ironically, abuse that was mostly conducted by the father who was presented as a sympathetic witness by the lawyer. But doing nothing, what this lawyer did here, is simply not a reasonable option under those circumstances. Kagan. Well, let's focus on the State court's analysis because, as Justice Smith pointed out, its deferential review in the State court found that counsel made reasonable tactical choices. You referred to his IQ and his capabilities, but as the State court indicated, that there was no indication in the record that would have alerted counsel to the fact that some investigation into his IQ and upbringing was necessary because Moore was conversant with counsel, even discussing religious philosophy. So where did the State court go astray with regard to that finding? What the lawyer explains at the State post-conviction hearing is that he wasn't aware of any of this information because he didn't look into it. And what the State court did was that it credited what Mr. Walmer, what the lawyer, Mr. Walmer, stated. What I would submit is that even taking what he's saying at his word at that hearing, what he's describing is not a professional, not professional representation of his client. He doesn't hire an investigator. The only specific investigation that he recalls when he testifies at the hearing is talking to family members out in the hallway at the conclusion of the testimony of each day in the trial. Regards to his explanation for not having his client evaluated, he says that he spoke with him, and he said that he appeared to be conversant with him. Respectfully, I would say that, you know, that's why we have experts, because a lawyer is not in a position to have a chat with his client and determine that there isn't anything worth looking into. When this case came to federal court, we presented some new information that had not been presented in the State courts. There was an evaluation done of Mr. Moore that shows that he's functioning at a borderline level of IQ. We also have submitted a number of declarations from his family who say that they are basically putting this information right in the lawyer's lap. One of the aunts walked into his office and said, in fact, why don't you look into Mr. Moore's family history? Why don't you look into his mental capacity? And she was basically kicked out of the office. Well, with regard to calling witnesses, I know that the argument is that he didn't call certain family members. As I understand it, the State court found that the grandmother was supposed to be called, but she couldn't be found. And there was a strategic choice not to call the aunt because she was very abrasive and counsel thought that that would have backfired before the jury. Was that not a tactical decision on counsel's part? What the – it's not a reasonable tactical decision. I mean, what the record shows with the grandmother is that he went out in the hallway to call her during the penalty phase hearing. She wasn't there, so he came back in and he continued with the hearing. If this was an important witness that he wanted to call, he should have procured her presence in the courtroom. If he had done that and she wasn't there, he should have done something about it rather than just moving on to the hearing. A professional mitigation presentation isn't based on whoever happens to be out in the hallway during the proceedings. As for the aunt, even taking his word that he didn't call her for that reason, that still doesn't explain why he didn't at least look into these issues that she was bringing up to his attention, that she was putting right into his lap. But it seems a little tough to say that when you've got a grandma there, you should subpoena her to be there. I mean, generally, family witnesses, me having been in the trial many times, when you have family witnesses, you don't usually subpoena them because you don't want necessarily the government to know what the situation is. The record here shows that his family members had been attending the trial. Well, I understand that. So, I mean, I was just trying to have you think about what you're really saying to answer my colleague's question is, no, he should have subpoenaed the grandma if he really wanted her there. Well, that's not the norm in a family situation, is it? It is in your state. I mean, it just doesn't seem to be the way it would be in Idaho. I thought it wouldn't be much different in Nevada having practiced there some of my career. I guess what I'm really saying, Judge Smith, is that if this was really an important witness that he had planned to call as part of his strategy, he should have done something about it if somebody peeked down the hallway and she wasn't there. It seems to me he did do something about it. He said she should be there, she was supposed to come, she was to be there, and the only thing more she could have done is to subpoena the grandma, isn't it? Well, he said that he expected her to be there, so it's not clear if he had subpoenaed her or not. Well, I don't think he did subpoena her, but that's why I was just wondering about your argument. I mean, frankly, I have to look at what the state court said. Hey, failure to investigate was reasonable. Not putting the family members on to testify about abusive childhood was a tactical decision. Couldn't find the grandma, and he didn't feel like the aunt ought to do it. Aunt, to quote my colleague. I think at most you could maybe look at some of the individual decisions that were made by the lawyer here and say maybe in a vacuum that was okay. Maybe in a vacuum that was reasonable for the state court to say that. But looking at the totality of what this lawyer did, more accurately what he didn't do simply doesn't add up to anything resembling a professional mitigation presentation. There was plenty of investigation that could be done. There was plenty of evidence that could have been presented, and this lawyer chose to do nothing. Is there any other issue you wanted to give it to us on today? You've only got four minutes left. Let me address one issue regarding the issue of this evidence that we presented in the state court because the state's brought up a pinholster here. I agree that pinholster would preclude the Court's consideration of this evidence, at least with the deficient performance prong. My argument is that the state court record, even without this evidence, is sufficiently strong to show that the lawyer's performance was deficient, even under the double-deference standard. But if the Court were to disagree with that, what I'm asking the alternative is that this case be remanded so that Mr. Moore can do what the Supreme Court said you can do to solve the pinholster problem, which is to present this evidence in the first instance to the state courts. This would include the declarations from the family members. This would include the evaluation. And this would include evidence that's recently used. What case are we really going to look at for that? I mean, since pinholster, until we came to Martinez, since pinholster, it seemed like the case law was pretty straightforward, and Martinez wouldn't apply to this situation. So I'm having a tough time even knowing what case you want me to rely on to do what you're asking me now to do. The case is Gonzales v. Wong from this Court two years ago. Okay. That's the best case you got on that? That's the case that agrees that they couldn't consider newly presented evidence, but said that the remedy was to allow a remand with instructions that the case be stayed pursuant to the criteria in Reins v. Weber so that the new evidence could be presented in the first instance to the state court. All right. And there's extensive evidence here, including not just this evidence presented in the Federal Court, but this evidence that's recently come to light about this lawyer's traumatic brain injury, which he suffered sometime before this trial and which he's now claiming in the Federal District Court below has profoundly affected his functioning for years afterwards. There's every reason to believe that a state court, considering the totality of this evidence, couldn't decide, reasonably applying Strickland, that Moore received effective assistance from his counsel. Anything further? I'll reserve the rest of my time for rebuttal, Your Honor. All right. We'll ask the State then to respond. Good morning, Your Honors. My name is Michael Bongard, representing the Nevada Attorney General's Office, and Respondent Rene Baker in this matter. Your Honors, the first issue I wanted to address was the sixth question that was presented. And again, I filed a motion to dismiss that claim because my argument was that the claim was unexhausted. The Federal District Court judge found the claim exhausted because there was a discussion between one of the judges on the Nevada Supreme Court panel and both attorneys as to whether Sharma v. State and the subsequent decision, Bolden v. State, applied in this matter. If we agree with you and find that the claim is unexhausted, what then? Remand for state abeyance? Your Honor, I'm not even sure that remand would be appropriate because, number one, both these cases, Sharma and Bolden, were final or were issued after Moore's appeal became final. So I'm not even sure that they would apply. There was a question as to the retroactivity of Bolden. And again, it's a State law case, so I believe that if this matter were to go back down, the Nevada Supreme Court would say, like its decision in NECA, you know, the question is, number one, foreclosed because I believe NECA said it was a change in the law. Well, that's the problem. It hasn't been briefed at all. What happens if we decide to take up the matter, neither side has briefed whether there's good cause, potentially excusing the procedural default? So wouldn't it make sense, then, to remand for the district court to take a look at whether state abeyance would be appropriate? And, Your Honor, again, I think the district court in this case said that a change in State law or whether the State instruction followed State law because it was a question as to whether the unintended consequences doctrine was applicable in Nevada. And certainly, whether or not Nevada follows the unintended consequences doctrine or the doctrine that they've adopted in Sharma and Bolden, I don't believe raises a Federal question. But getting back to that oral argument, this was one of the first cases I handled, and there was nothing in that discussion between the court and the attorneys that raised Federal constitutional question, Fourth Amendment, Fifth Amendment, Sixth Amendment, Fourteenth Amendment, due process, or fair trial. And that's the standard that the law has for alerting the State courts that a Federal constitutional claim has been raised. And none of that took place in this case, in that oral argument. And I believe it was about five minutes that was fit in it. So I, again, finding that this claim is exhausted stands the law in exhaustion on its head, basically creates exhaustion by judicial fiat. And that's not appropriate. There has to be something that alerted the Federal court that a constitutional claim was raised. And it just didn't happen in this case. Scalia. Well, don't we really have to make a determination ourselves if we don't remand to that, Moore had failed to show any evidence of good cause, which is required for stay in abeyance? Well, you can deny an unexhausted claim on its merits. And I believe if you look at the Federal district court's ruling in this case, because it was a different judge that handled the merits decision in this case, as opposed to the initial ruling as to whether the claim was exhausted. And he based his decision on a change in state law. It doesn't raise a Federal question. And that was his decision for denying the claim on the merits. Turning to the claim that counsel addressed in his statements, again, I would agree with the questions from the court that were foreclosed. You're foreclosed from considering the claim as to whether his performance rose to a deficient level under the Strickland analysis. Even if you stop there, Your Honor, I don't believe that you can even find prejudice in this matter. If you look at the documents that were submitted by opposing counsel, he submitted the decision by the Nevada Supreme Court on the case involving the co-defendant in this case, LaShawn Maxey. Excuse me, Kenshawn Maxey. And if you look at that, the exact defense that was presented during the mitigation phase in his case was not bought by the jury, was not bought by the Nevada Supreme Court. They raised his age and youth. They raised the fact that he was deficient in his education and background. They raised the fact that there had been an expert hired that did an evaluation of him. And again, the jury did not buy that. And if you buy the argument that was made in opposing counsel's reply brief, that he admits that this case, we're not dealing with a juvenile or youthful offender. In Maxey's case, we are dealing with that youthful offender. And the sentence that resulted was a sentence of life without parole. So, Your Honor, even if you, even if you, again, look at the prejudice prong of Strickland, again, prejudice can't be shown. Your Honor, those are the two questions that I wanted to impress upon the Court. If the panel does not have any other questions, I would yield back the balance of my time. Thank you. Thank you. Thank you very much. Counselor, you have about two minutes left, I think. I'd like to bring up the prejudice argument that State's counsel just brought up. The co-defendant was charged capitally. His was a death penalty trial. This was the person who was actually inside the bar who murdered two people in cold blood. And as the State pointed out, he did have a lawyer who bothered to bring a mitigation case to the jury's attention, involving, among other things, his mental capacity, the abuse he had suffered. And the jury, after hearing all that information, took it into account and didn't give him the death penalty. In fact, they specifically cited that evidence as the mitigating factors that caused them to give a lower sentence. There's every reason to believe that a Nevada jury, if given a similar presentation in Moore's case, would have decided there to provide him something less than the highest sentence that the law allowed. The jury wasn't being asked to let Artis Moore out of prison the next day. The minimum sentence that he was facing under Nevada law, once he was convicted of first-degree murder, was 20 years for the first-degree murder and an equal consecutive term of 20 years for the deadly weapon enhancement. So no matter what happened, he was going to be in prison until he was 59 years old. And the question would be then whether he would have a chance to show a parole board that he should be released. It wasn't unreasonable. You do counsel with Cooper, Smith, and Davis. We're bound by those decisions, the cases that talk about whether there's clearly established law in terms of IAC claims in non-capital sentencing contexts. What does this panel do with that? I think the State is misreading those cases, and they're saying that there's a bright line rule there between capital and non-capital sentencings. That's we know that's not correct because the Supreme Court has specifically applied Strickland to a non-capital sentencing in the Glover case that was decided in 1999. More generally, since Strickland, the Supreme Court has made very clear that the Strickland standard is the standard that applies to all facets of an attorney's case, from motions to plea negotiations to the trial and afterwards on the appeal. It would be very strange if that right suddenly disappeared just at the phase where the sentence was being argued. I see that my time is up, so unless there are additional questions, I'll submit the case. Thank you very much. Thank you both for your argument. Case 11-15695 is submitted.
judges: Quist, Smith, Nguyen